UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim No. 25-388 |
| *Plaintiff*, | |
| v. | **OPINION** |
| LAMONICA MCIVER, | January 5, 2026 |
| *Defendant*. | |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant LaMonica McIver's ("Defendant") motion to dismiss the indictment against her for legislative immunity under the Speech or Debate Clause. (ECF 19.) The Court previously denied Defendant's motion to dismiss Counts One and Three of the indictment, and reserved ruling on Count Two pending further briefing and continued discovery. (ECF 44, "November Opinion" at 23-24.) On November 17, 2025, the Court ordered additional briefing and discovery on Count Two. (ECF 47.) For the reasons stated below, Defendant's remaining motion to dismiss Count Two of the indictment is **DENIED**.[1]

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Court incorporates the facts and procedural history from its November Opinion herein. (*See* ECF 44 at 2-7.) On May 9, 2025, Defendant, a Congresswoman representing the 10th Congressional District of New Jersey, and two fellow members of Congress ("Representative-1" and "Representative-2"; collectively, "Representatives") made an unannounced oversight visit to

---

[1] The Court's decision is subject to immediate appeal under the collateral order doctrine. *See Helstoski v. Meanor*, 442 U.S. 500, 506–08 (1979).

Delaney Hall, an immigration detention center in Newark, New Jersey. Department of Homeland Security ("DHS") officials inexplicably made the Representatives wait in Delaney Hall's administrative office for over an hour. (ECF 44 at 3.) During this delay, DHS officials arrested the Mayor of Newark ("the Mayor") for trespassing shortly after they had allowed him onto Delaney Hall's grounds.[2] (*Id.* at 4.) Moments before the Mayor was arrested, Defendant briefly left the facility's secured area to object to the Mayor's arrest, which DHS officials effectuated in a crowd of protestors. (*Id*. at 4-5.) As the Special Agent in Charge ("V-1") led the handcuffed Mayor towards the facility's secured area, Defendant and Representative-2 followed them back towards the facility's entrance. (*Id.* at 5.)

Defendant encountered and initiated contact with V-2, an Immigration and Customs Enforcement ("ICE") Deportation Officer, as she approached the gates of Delaney Hall (the "Security Gate").[3] (ECF 51-7, "Def. Ex. CC", 00:50.) The physical contact between Defendant and V-2 lasted only two to three seconds (*id.*, 00:52-55) and occurred approximately ten seconds after the conduct that constitutes the Government's charges in Counts One and Three. (Def. Ex. A, 01:27:58-01:28:09.) Immediately after Defendant's contact with V-2, she was forcefully shoved by a similarly dressed ICE officer as she tried to lawfully re-enter the Security Gate. (Def. Ex. CC, 00:55.) Defendant was able to enter the facility shortly thereafter, when Representative-

---

[2] The Government dismissed the Mayor's trespass charges twelve days later. (ECF 44 at 6.)

[3] In its November Opinion, the Court determined that immediately after the Mayor's arrest, Defendant was pushed at the Security Gate without provocation by an ICE official mistakenly identified as V-2. (ECF 44 at 6.) A review of newly submitted body worn camera reveals that V-2 is a similarly dressed but distinct ICE officer. Immediately before Defendant was pushed by the ICE official at the Security Gate, Defendant made physical contact with V-2, who backpedaled into Defendant's path as she approached the Security Gate. (Def. Ex. CC, 00:52.) V-2 was obscured on Defense Exhibit A by the protestors surrounding the Security Gate. (ECF 19-3, "Def. Ex. A", 1:28:05-25.)

2 wrapped his arms around her and pulled her through the gates. (*Id.*, 01:02.) After the Mayor's arrest, Defendant and the Representatives returned inside the facility and were allowed to conduct their oversight inspection. (ECF 44 at 6.)

The Government charged Defendant with three counts of assaulting, resisting, impeding, and interfering with a federal officer in violation 18 U.S.C. § 111(a). (*See* ECF 1, 12.) This Court denied Defendant's motion to dismiss Counts One and Three of the indictment in its November Opinion,[4] finding that Defendant's conduct as alleged in those counts was not protected by the Speech or Debate Clause because she was not engaging in a legislative act. (ECF 44 at 23.) The Court reserved ruling on Defendant's legislative immunity for her alleged conduct in Count Two pending review of additional footage of the incident. (*Id.* at 24.) A copy of the body worn camera video that best captures the conduct in Count Two was provided to the Court at the conclusion of the November 17, 2025 status conference.[5] (ECF 52 at 2.) At the status conference the Court also requested the parties submit briefs regarding Defendant's legislative immunity under Count Two, which the Court received on December 9, 2025. (*See* ECF 51, "Def. Br."; ECF 52, "Govt. Br.")

The Court now considers whether Defendant is immunized from criminal liability for Count Two.

---

[4] The Court also denied Plaintiff's motion to dismiss for selective enforcement and vindictive prosecution, which is not entitled to immediate appeal under the collateral order doctrine and is not the subject of this opinion. *See United States v. Biden*, No. 24-1703, 2024 WL 4541448, at *2 (3d Cir. May 9, 2024) (holding criminal defendants raising selective and vindictive prosecution claims "cannot appeal before final judgment.").

[5] Defendant includes a copy of this video as Defense Exhibit CC. (*See* ECF 51-1, "Decl. P. Fishman" ¶ 4.)

## II.  LEGAL STANDARD

The Court incorporates the binding Speech or Debate Clause precedent and the two-step framework the Third Circuit established for identifying legislative acts protected by the Speech or Debate Clause examined in its November Opinion. (*See* ECF 44 at 8-14.)

The Speech or Debate privilege affords Members of Congress protection from indictment for their "legislative activities." *United States v. Brewster*, 408 U.S. 501, 512 (1972). The Third Circuit in *United States v. Menendez* laid out a two-step test for determining legislative acts protected by the Speech or Debate Clause. 831 F.3d 155 (3d Cir. 2016). Courts must first "look to the form of the act to determine whether it is inherently legislative or non-legislative" and, if the act is neither, it is deemed ambiguously legislative, which requires the court to proceed to the second step of the analysis and "consider the content, purpose, and motive of the act to assess its legislative or non-legislative character." *Id.* at 166. The Speech or Debate Clause provides immunity for acts where the legislator's "primary purpose" is "to gather information in support of future legislation or to engage in policy-based oversight." *Id.* at 173.

Accordingly, the Speech or Debate privilege applies when legislators are engaging in "true legislative oversight[.]" *United States v. McDade*, 28 F.3d 283, 304 (3d Cir. 1994) (Scirica, J., concurring). But "claims of 'oversight' do not automatically result in Speech or Debate protection." *Menendez*, 831 F.3d at 168. The Third Circuit has recognized that "oversight activities exist along a spectrum: the Speech or Debate protection is obvious at the edges where they are manifestly legislative or clearly non-legislative, but it is not obvious in the middle ground where they are ambiguously legislative and consideration of their content, purpose, and motive is necessary." *Id.*

4

## III. DISCUSSION

The Court has already determined that Defendant's visit to Delaney Hall was an ambiguously legislative act, since she and the other Members of Congress were statutorily authorized to enter and inspect the facility for the purposes of conducting oversight pursuant to Section 527 of the Further Consolidated Appropriations Act ("§ 527").[6]  (ECF 44 at 14.)  Because ambiguously legislative acts are "protected or unprotected based on their particular circumstances[,]" the Court must "consider the content, purpose, and motive of the act to assess its legislative or non-legislative character." *Menendez*, 831 F.2d at 166 (citing *Gov't of V.I. v. Lee*, 775 F.2d 514, 522-24 (3d Cir. 1985)).

The Government contends that "Defendant's actions as alleged in Count Two were simply the continuation of her actions in Count One, albeit with a different individual being subject to her ongoing efforts to interfere with the Mayor's arrest." (Govt. Br. at 5.)  Defendant argues that "the contact alleged in Count Two was clearly incidental to the Congresswoman's core purpose of reentering the facility" and that "entering a detention center under § 527 is a formal act of oversight well within the Speech or Debate Clause's protection."  (Def. Br. at 5, 10.)  Defendant asks this Court to dismiss Count Two on this basis.

The video evidence provided to the Court reveals that in her brief interaction with V-2, Defendant was not engaging in cognizable legislative activity.  As the record was developing, the Court initially found that the officer who it believed to be V-2 had initiated physical contact with Defendant at the Security Gate "by forcibly pushing her back into the public parking lot,"

---

[6] Section 527 prohibits DHS from using funds "to prevent" a Member of Congress or their designated employee "from entering, for the purpose of conducting oversight, any facility operated by or for the Department of Homeland Security used to detain or otherwise house aliens, or to make any temporary modification at any such facility that in any way alters what is observed by a visiting Member of Congress[.]"  Pub. L. No. 118-47, 138 Stat. 360 § 527(a) (2024).

5

potentially frustrating Defendant's right to enter and inspect the facility under § 527. (ECF 44 at 6, 23 n.25.) After supplemental discovery, Defense Exhibit CC reveals it was Defendant who initiated physical contact with V-2 outside the facility's gates. (Def. Ex. CC, 00:52.) While Defendant argues that it was "*V-2 who initiated contact with Congresswoman McIver* as she reached the facility's entrance, driving his shoulder into the Congresswoman's chest to block her progress" (Def. Br. at 9) (emphasis in original), video footage shows that V-2 was not facing Defendant or purposely impeding her when the physical contact occurred. (Def. Ex. CC, 00:52.)

The Court does not find that V-2 was interfering with Defendant's right to enter the facility under § 527. Though Defendant argues that V-2 "placed himself squarely between the Congresswoman and the entry" of the Security Gate, "deliberately keeping himself between the Congresswoman and the entryway" (Def. Br. at 9), the facts support the Government's interpretation of V-2's movement toward the Security Gate. (*See* Govt. Br. at 5) ("V-2 [was] attempting to clear a path for V-1 to effect the arrest of the Mayor.") Accordingly, V-2 was not "prevent[ing]" Defendant "from entering, for the purpose of conducting oversight, any facility operated by or for the Department of Homeland Security used to detain or otherwise house aliens" in contravention of § 527. 138 Stat. 460 § 527(a). Defendant's conduct as alleged in Count Two is therefore outside the scope of § 527.

The Court cannot find that Defendant's alleged conduct was legislative in nature. When Defendant encountered V-2, and in the few seconds that followed, she was not engaging in "fact-finding, information gathering, [or] investigative activities[.]" *Lee*, 775 F.2d at 521. Her conduct was not tied to potential legislation or any other policy-making purpose. *See Menendez*, 831 F.3d at 169 ("informal attempts to influence the Executive Branch on policy, for actual legislative

purposes, may qualify as 'true legislative oversight' and merit Speech or Debate immunity.")  The physical contact she engaged in outside the facility lacked a legislative prerogative.

In *Menendez*, the Third Circuit affirmed the district court's holding that the defendant's acts were not protected by the Speech or Debate Clause because "the predominant purpose of the challenged acts was to pursue a political resolution" for a physician embroiled in a bribery scheme, and "not to discuss broader issues of policy" or "engage in informal information gathering for legislation." 831 F.3d at 173.  Similarly, here, the Court cannot find that the predominant purpose of Defendant's challenged act was legislative.  Like in Counts One and Three, Defendant has not established that the purpose of her alleged conduct was "to conduct oversight or gather information for a legislative purpose." (ECF 44 at 23.)  Rather, her decision to leave the facility and become involved with the Mayor's arrest was "essentially lobbying on behalf of a particular party" which remains "outside the constitutional safe harbor." *Menendez*, 831 F.3d at 169.  Defendant's conduct outside the facility's gates was "disconnected from the oversight she and the Representatives later conducted when touring the facility, where they engaged in protected fact-finding related to federal immigration policy." (ECF 44 at 19.)

Defense Exhibit CC demonstrates Defendant was not engaging in legislative activity while outside the facility's gates, and Defendant's entry and inspection authority under § 527 was not implicated by the contact she initiated with V-2.  Therefore, the "content, purpose, and motive of the act" alleged in Count Two all confirm its non-legislative character.  *Menendez*, 831 F.3d. at 166.  Accordingly, Defendant's conduct is not protected by the Speech or Debate Clause.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment for legislative immunity (ECF 19) is **DENIED**.  This decision is subject to interlocutory appeal under the

collateral order doctrine. *See United States v. McDade*, 28 F.3d 283, 288 (3d Cir. 1994) ("[W]e have jurisdiction to entertain the defendant's claim that the Speech or Debate Clause requires dismissal of the entire indictment or particular charges contained in the indictment."). An appropriate Order follows.

                                              */s/ Jamel K. Semper*
                                              **HON. JAMEL K. SEMPER**
                                              **United States District Judge**

Orig:   Clerk
cc:     Parties