# EXHIBIT 10

Arnold & Porter

**Lee Cortes**
+1 973.776.1853 Direct
Lee.Cortes@arnoldporter.com

January 26, 2026

**VIA E-MAIL**

AUSA Mark J. McCarren
AUSA Benjamin D. Bleiberg
U.S. Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102

Re: *United States v. LaMonica McIver*, Crim. No. 25-388

Dear Messrs. McCarren and Bleiberg:

We write to follow up on our January 15 telephone call.

First, as we discussed, every "Forensic Examination Report" that you produced to us on November 26, 2025 contains extensive redactions on the first few pages. We have attached two examples. Because these Reports are responsive to our discovery requests—particularly those with which the Court directed the USAO to comply—we see no basis for these redactions in light of the protective order, which directs that neither we nor Congresswoman McIver disseminate the electronic communications produced in discovery. Indeed, the Justice Manual suggests that such an order is sufficient to protect sensitive information without the need for redactions. *See* Justice Manual, Section 9-5.004 ("If the e-communication contains sensitive information, the prosecutor should consider whether to file a motion for a protective order … [or] … make appropriate redactions"). Moreover, we do not understand your refusal even to describe the redacted material, much less your reason for withholding that material.

We also strongly disagree with your attempt to shift the burden and require us to specify why these redactions are unwarranted. Obviously, we are unable to do so because the breadth and scope of the redactions—many of which are full pages—provide no context from which we can divine the type of information that you have chosen to withhold or the ostensible reason for your doing so.

Arnold&Porter



Second, as we also discussed, Judge Semper encouraged your office at the November 17 hearing to work with us to develop a list of appropriate search terms for the remainder of the potentially responsive electronic communications. *See* Nov. 17 Tr. at 14-15. Yet you have so far refused to share the complete list of terms you already have used. Therefore, understanding that you may have used some of these already, we propose the following search terms:

- Congress*
- Representative
- Rep*
- Member*
- McIver
- La*Monica
- Rob
- Menendez
- Bonnie
- Watson-Coleman
- Watson
- Coleman
- Mayor
- Major
- Ras
- Baraka
- NPD
- Delaney
- Dhall
- DH
- (Video* or bwc or body) w/5 (fox or news or online or twitter or Instagram or IG or social)
- Democrat*
- Dem*
- Lib*
- Left*
- Radical
- Oversight
- Inspect*
- Charge*
- Indict*
- Antifa
- Ricky
- CJ
- SAIC
- SAC
- Protest*
- Push*
- Shove*
- Storm*
- Force*
- "broke in"
- "press release" and (tricia or DHS or Delaney or hall or dhall)
- 18USC
- Assault
- Hit
- Arrest
- Hurt
- Fear
- Afraid
- Harm
- Intimid*
- Impede
- Impair
- Trespass
- Bus

Arnold & Porter

Lee Cortes
+1 973.776.1853 Direct
Lee.Cortes@arnoldporter.com

In our view, these search terms should be applied in two ways:

- With respect to the seven representatives of ERO's and HSI's management teams who were present at Delaney Hall on May 9, 2025 (the "DHS Officials"), you should apply the search terms to all text, voice, instant, chat, or email messages sent to, from, between, or among the DHS Officials on any app or platform between February 3, 2025 (the date Congresswoman McIver visited the ICE facility in Elizabeth) through July 15, 2025 (the last date on which DHS issued a press release falsely indicating that Congresswoman McIver had "stormed" the gate).

- With respect to the sixteen ERO Deportation Officers or HSI Special Agents who were present at Delaney Hall on May 9, 2025 (the "DHS Officers"), you should apply the search terms to all text, voice, instant, chat, or email messages sent to, from, between, or among the DHS Officers, on any app or platform between 7:00 AM on May 9, 2025, and June 10, 2025 (the date the Indictment was signed).

Third, we turn once again to the subject of personal devices. As you know, favorable, material evidence within law-enforcement files, or known to law-enforcement officers, is imputed to the prosecution and must be disclosed. Moreover, the government's discovery obligations under Rule 16, *Brady,* and *Giglio* turn on the *substance* of the information in the government's possession, not the particular device on which it is stored or the method of communication that the agents decided to use. Thus, you—the prosecutors, not the agents—have an obligation to search for any discoverable information that the agents may possess on their personal devices. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"; good or bad faith of individual prosecutor is irrelevant to obligation to disclose).

Indeed, not only is the duty to inquire mandated by law, it is the official policy of the Department of Justice. As set forth in Section 9-5.002 of the Justice Manual, "[i]t is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. … This search duty also extends to

information prosecutors are required to disclose under Federal Rules of Criminal Procedure 16 and 26.2 and the Jencks Act."

Therefore, we reiterate our view that you must:

1. interview all DHS Officials or Officers who were at Delaney Hall on May 9;

2. inquire whether any of them ever used their personal devices to communicate in any way about the May 9 events;

3. direct that they search those personal devices for any communications (regardless of when those communications took place), concerning or referring in any way to:

    a. Congresswoman McIver, Mayor Baraka, Congressman Menendez, or Congresswoman Watson Coleman; or

    b. the events of May 9;

4. determine whether any of them deleted any such communications; and

5. direct each of them to submit a sworn statement memorializing the results of their review.

Finally, we reiterate our request for all metadata concerning electronic communications that you produce, and have previously produced, in discovery. Metadata can be material to the preparation of our defense, and it could also amount to *Brady* and *Giglio* information. To give you but one example: the screen shots, which show that certain message recipients responded with "emojis," do not identify who sent those emojis. Certainly, we are entitled to that information, and metadata is the best way to obtain it. Moreover, as we emphasized during our call, the production of metadata in criminal e-discovery has been common since at least 2012, when a Joint Working Group of the DOJ and Administrative Office of the Courts made its recommendations on electronic discovery in the federal criminal justice system. *See* Recommendations for Electronically Stored Information (ESI) Discovery

Arnold & Porter



Production in Federal Criminal Cases (February 2012), available at https://www.justice.gov/archives/dag/page/file/913236/dl?inline.

Please advise us of your position on all of these matters promptly, so that we can determine the extent to which we need to seek further Court intervention. Of course, we will also make ourselves available to meet and confer about these issues and can do so on Thursday or Friday of this week.

Sincerely,

Lee M. Cortes, Jr.

Enclosures