**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*v.*<br><br>LaMONICA McIVER | Hon. Jamel K. Semper<br><br>Crim. No. 2:25-cr-00388-JKS |

# CONGRESSWOMAN McIVER'S REPLY BRIEF IN FURTHER SUPPORT OF HER SUPPLEMENTAL MOTION TO COMPEL DISCOVERY

ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102

*Counsel for Congresswoman LaMonica McIver*

November 23, 2026

## TABLE OF CONTENTS


INTRODUCTION .....1

I. Congresswoman McIver Seeks Discovery to Which She is Clearly Entitled .2

II. The Government Must Identify Responsive Material on Personal Devices ...7

III. The Government Must Describe Its Preservation and Collection Actions......9

IV. The Government Should Use Congresswoman McIver's Search Parameters .....11

A. The Proposed Time Periods are Appropriate .....11

B. The Additional Proposed Search Terms are Appropriate .....13

CONCLUSION .....15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................1, 5, 9, 14

*Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263 (3d Cir. 2016) (en banc)....................2

*Douglas v. Owens*, 50 F.3d 1226 (3d Cir. 1995) ....................4

*Holmes v. South Carolina*, 547 U.S. 319 (2006) ....................5

*Johnson v. Folino*, 705 F.3d 117 (3d Cir. 2013)....................5

*Kyles v. Whitley*, 514 U.S. 419 (1995)....................8, 9 n.3

*M-J-M-A v. Hernandez*, 2026 WL 3301008 (D. Or. Nov. 2, 2026) ....................11

*United States v. Abel*, 469 U.S. 45 (1984) ....................4

*United States v. Austin*, 533 F.2d 879 (3d Cir. 1976) ....................3

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020)....................1

*United States v. Chapman*, 528 F.3d 1215 (9th Cir. 2008) ....................3

*United States v. David*, 2026 WL 1880216 (W.D. Va. June 30, 2026)....................9

*United States v. Feola*, 420 U.S. 671 (1975) ....................3

*United States v. Goodwin*, 440 F.2d 1152 (3d Cir. 1971) ....................6

*United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) ....................5

*United States v. McIver*, 191 F.4th 130 (3d Cir. 2026) ....................6

*United States v. Papagni*, No. 18-cr-0336 (D.N.J. Jan. 30, 2019), Dkt. 94....................3

*United States v. Risha*, 445 F.3d 298 (3d Cir. 2006) ....................8

*United States v. Sriyuth*, 98 F.3d 739 (3d Cir. 1996)....................3

*United States v. Tovar-Duran*, 191 F.4th 1012 (9th Cir. 2026) ............................8, 9

*United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016)....................................3

**Constitutional Provisions**

U.S. Const. amend. VI ..........................................................................................5

**Statutes**

18 U.S.C. § 111(a) ..................................................................................................3

**Rules**

Fed. R. Crim. P. 16..........................................................................................2, 5, 14

Fed. R. Crim. P. 16(a)(1)(E)(i) ................................................................................2

**Other Authorities**

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security (Oct. 30, 2026), https://www.justsecurity.org/120547/presumption-of-regularity/......................11

Justice Manual § 9-5.001(C)(1) ...............................................................................2

Third Circuit Model Criminal Jury Instructions §§ 5.01, 5.04 (June 2026) ...........................................................................................................3, 4

## INTRODUCTION

The government's opposition brief adopts a radically narrow view of Congresswoman McIver's right to mount a full defense and its own discovery obligations. The government takes the extraordinary position that "state of mind" evidence is "not relevant," and recharacterizes the Congresswoman's discovery requests as seeking justification, mistake of fact, and jury nullification evidence. Opp.8. It then treats the information she requests as discoverable *only* to impeach the government's witnesses, disregarding its value in rebutting the government's affirmative case, identifying possible defense witnesses, and otherwise developing favorable evidence. To be clear: Congresswoman McIver seeks information corroborating that she lacked criminal intent when she made incidental contact with ICE agents during a scrum they initiated; any evidence that tends to make that more likely is discoverable, regardless of whether it ultimately is admissible.

Congresswoman McIver's requests must be evaluated under the proper standards for pretrial disclosure—not the "retrospective test" applicable "after trial has concluded" when the government has already been found to have suppressed evidence. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020); *contra* Opp.5-6. *Brady* places "the burden of obtaining favorable evidence squarely on the prosecutor's shoulders," and requires disclosing "all favorable evidence." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 290-93 (3d Cir. 2016) (en banc). Rule 16

additionally requires the production of information "material to preparing the defense," including information useful to investigating the encounter. Fed. R. Crim. P. 16(a)(1)(E)(i). And DOJ policy requires disclosing information inconsistent with any element of a charged offense. Justice Manual § 9-5.001(C)(1). The government's contrary position only underscores the need for judicial intervention; indeed, the government's narrow view of the scope of this case has likely undermined its discovery efforts since the beginning of this prosecution. The Court should grant the Congresswoman's motion.

## I. Congresswoman McIver Seeks Discovery to Which She is Clearly Entitled

The indictment charges Congresswoman McIver for incidental contact that took place when she responded to ICE agents obstructing her statutorily authorized inspection of Delaney Hall. That context helps explain that she was interacting with agents to protect her investigation from interference and did not set out to use force; it also supports her explanation that the contact was incidental and unintentional. Evidence showing how agents obstructed the inspection, planned and carried out the arrest, and perceived the ensuing encounter would corroborate and credit Congresswoman McIver's account and could identify witnesses who can support it. Her requests are therefore directly relevant to the government's obligation to prove "criminal intent." *United States v. Feola*, 420 U.S. 671, 686 (1975). That is what the Congresswoman seeks: material substantiating her lack of criminal intent—not

evidence of justification, mistake of fact, or jury nullification.

The government does not seriously dispute that Congresswoman McIver's discovery requests are calculated to produce evidence corroborating her state of mind; instead, it takes the position that her state of mind is "not relevant" *at all*. Opp.8. That is plainly wrong. Section 111(a) requires the government to prove "criminal intent." *Feola*, 420 U.S. at 686. And intent *is* "the state of mind with which the particular act is done." Third Circuit Model Criminal Jury Instructions § 5.04 (June 2026). That "state of mind," *i.e.*, "*intent*," requirement asks the jury to "consider evidence about … all the [] facts and circumstances … that may prove what was in [the defendant's] mind." *Id.* § 5.01; *see United States v. Austin*, 533 F.2d 879, 883 (3d Cir. 1976) (same). Congresswoman McIver's state of mind accordingly bears directly on whether she intentionally committed the charged acts, and the government does not identify a single case supporting its contrary position.

Congresswoman McIver's state of mind is particularly relevant because a felony charge under § 111(a) requires proof of assaultive conduct, *i.e.*, a willful "attempt or threat to do injury to the person of another." Jury Instructions at 19, 22, *United States v. Papagni*, No. 18-cr-0336 (D.N.J. Jan. 30, 2019), Dkt. 94; *see United States v. Wolfname*, 835 F.3d 1214, 1220 (10th Cir. 2016); *United States v. Chapman*, 528 F.3d 1215, 1221 (9th Cir. 2008). In other words, the government must prove she "intended to injure" the victims identified in the indictment. *Wolfname*, 835 F.3d at

1222-23. Evidence corroborating that she was instead focused on the agents' interference with her inspection would counter that theory.

Congresswoman McIver's discovery requests are also relevant to motive, and evidence of motive "is always relevant in a criminal case." *United States v. Sriyuth*, 98 F.3d 739, 747 n.12 (3d Cir. 1996). The model jury instructions accordingly explain that although "proof of good motive alone does not establish that [a defendant] is not guilty … [e]vidence of [a defendant's] motive may" help the jury determine the defendant's intent. Third Circuit Model Criminal Jury Instructions § 5.04. The material the Congresswoman seeks bears on her reactions and behavior during the charged encounters and could help corroborate her explanation of her actions.

The discovery requests are also independently relevant to exposing bias in the government's witnesses, including by identifying potential defense witnesses to provide such evidence. *Douglas v. Owens*, 50 F.3d 1226, 1230 (3d Cir. 1995). The Supreme Court has made clear that extrinsic evidence of institutional bias is entirely proper. *United States v. Abel*, 469 U.S. 45, 52-56 (1984). Although the government's opposition ignores that case entirely, *Abel's* import is clear: communications revealing pressure from supervisors, shared interests with colleagues, or efforts to defend the agency's response to the inspection would not only impeach a government witness, they would also help Congresswoman McIver investigate those

influences and identify any appropriate defense witnesses of her own. The government's narrow focus on impeachment evidence overlooks that this discovery is relevant to Congresswoman McIver's own factual investigation and presentation.

Rule 16 encompasses information that can play an important role in "uncovering admissible evidence, aiding witness preparation, corroborating testimony, *or* assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (emphasis added). Evidence is likewise discoverable under *Brady* if it could lead to admissible evidence, even if the information itself is inadmissible. *Johnson v. Folino*, 705 F.3d 117, 129-30 (3d Cir. 2013). Those rules impose an affirmative obligation to identify and produce such evidence, as well as to respond to discovery requests seeking information that *may* support the Congresswoman's theory. The government may not evade that responsibility by narrowing its search to only the material that it might think helpful, exculpatory, or relevant. To the contrary, categorically denying Congresswoman McIver the opportunity to refute criminal intent and expose witness bias would abridge her Sixth Amendment rights to present a defense and confront the witnesses against her. *See Holmes v. South Carolina*, 547 U.S. 319, 324-26 (2006).[1]

---

[1] The government's affirmative obligations also require it to identify and produce investigative reports and witness statements that contain information favorable to the defense. To date, the government has provided none.

The remainder of the government's opposition is entirely non-responsive to Congresswoman McIver's actual requests. The government mainly attacks strawmen "justification" and "jury nullification" arguments, contending that Congresswoman McIver's intent cannot "entitle her to forcibly assault, impede or obstruct the arrest of the Mayor" and that she must therefore be on the hunt for jury nullification materials. Opp.8-10. That ignores the stated basis for Congresswoman McIver's requests. She seeks evidence that would corroborate her state of mind during the charged conduct, reveal bias, and otherwise identify witnesses and produce evidence material to her defense. Congresswoman McIver is undeniably entitled to evidence that "negates the existence of the necessary criminal intent," and it should have been straightforward to produce. *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971).

The government's alternative theory is that prior court rulings foreclose Congresswoman McIver's requests. Opp.7 n.6; 8-10. They do not come close. Her legislative immunity motion addressed only whether she had demonstrated a right to immunity by a preponderance of the evidence. Far from resolving her intent, the Third Circuit made clear that its analysis was "limited to the actus reus charged in each count" and the court specifically explained that she could "offer evidence addressing why she engaged in the offense conduct," including evidence of her legislative purpose. *United States v. McIver*, 191 F.4th 130, 142, 144 n.4 (3d Cir.

2026). Evidence corroborating that state of mind is precisely what she seeks here. Similarly, the Congresswoman's targeting motion sought evidence that this prosecution was premised on unconstitutional considerations; by contrast, this motion seeks evidence that the agents' behavior and testimony are tainted by bias. The government's unsupported assertion that the "intended use of the material sought is the same" is therefore plainly wrong. Opp.9.

Finally, it is premature for the government to seek resolution now about the availability of trial defenses by opposing the Congresswoman's discovery requests. The Court can and should grant discovery based on the showing above while waiting to adjudicate any admissibility disputes until trial. Any dispute over the permissible use of evidence, and the scope of defenses, should receive full pretrial briefing on a developed record at the appropriate time.[2]

## II. The Government Must Identify Responsive Material on Personal Devices

At no point does the government's brief address its obligation to look for discoverable material that may exist on personal devices. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Nor has the government offered any support for its radical position that it need not even inquire whether any discoverable material is present on the personal devices of prosecution team members, notwithstanding the

---

[2] Congresswoman McIver likewise reserves the right to file any appropriate motions following the Third Circuit's return of the mandate.

dangerous consequences of that position that were illustrated in the Congresswoman's opening brief. Opp.13-20; *see also* Mot.12-13.

Instead, the government's opposition relies almost entirely on mischaracterizing the Congresswoman's discovery requests. In particular, the government claims that she has issued blanket demands to review and produce material from "the personal cell phones of the 23 agents and officers." Opp.18; 13. Incorrect. Congresswoman McIver has requested *only* that the government *ask* all prosecution team members whether they used personal devices to communicate about the case or the events leading to its inception. If any agent answers affirmatively, the messages should be collected and reviewed. Mot.11-12.

This request falls squarely within the government's constitutional and legal duty to affirmatively seek these materials, even if they are "not in the possession of the Government." *Contra* Opp.13. "[T]he government's duty to disclose under Brady reaches beyond evidence in the prosecutor's actual possession." *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).[3] And this duty extends to personal devices. *See United States v. Tovar-Duran,* 191 F.4th 1012, 1017, 1019-20 (9th Cir.

[3] As argued in Congresswoman McIver's opening brief, the government is in constructive possession of materials held by members of its prosecution team. Mot.13-14. The 23 DHS officers and officials are members of the prosecution team because they are "acting on the government's behalf in the case." *Kyles*, 514 U.S. at 437; Mot.13-14.

2026); *United States v. David*, 2026 WL 1880216, at *4, *6-7 (W.D. Va. June 30, 2026). Any contrary rule would create a perverse incentive for law enforcement officials to house unfavorable material on their personal devices, contrary to Department of Justice policy, and would create an obvious end-run around the government's discovery obligations.

The government's attempt to distinguish *Tovar-Duran* and *David* is unavailing and ignores the major point for which they were cited: discoverable material on personal devices must be produced, and the government has a constitutional, statutory, and institutional duty to look for it. Moreover, both cases support the Congresswoman's arguments because the government has notice that an ICE Officer instructed another individual to call his "personal" device, and a subsequent review uncovered responsive material on that device. Opp.8; 18-19 n.8. The Court should grant Congresswoman McIver's request that the government take the sequenced steps outlined in paragraph 1 of the Proposed Order.

## III. The Government Must Describe Its Preservation and Collection Actions

The government's opposition is also noticeably silent about preservation. Specifically, it explains neither the gaps nor the preservation failures in the productions to date—including the deletion of material on a high-ranking official's device months after May 9, 2025. *See* Mot.19-23.

The brief announces that the government has "imaged 22 work phones of DHS

agents and ERO officers present at Delaney Hall on May 9, 2026 [sic]." Opp.3 n.5. That is, it now appears that the government has imaged the work devices of all ICE personnel who were present at Delaney Hall on May 9, except one.[4] But this representation differs from those the government made on November 26, 2025, and February 24, 2026: namely, that the government has not been able to collect *any* data from three devices: one belonging to the senior DHS Official, and two belonging to ICE Officers ("P" and "C"). Mot.20.

These different descriptions of the government's preservation efforts only underscore the need for additional details. The government should specify which devices were imaged, who did so, when that occurred, what data has been captured, and for what time period. The government should also clarify if, despite the government's prior representations, Officer P's and C's devices have been collected and whether any data was deleted. The government should also advise when it will supplement its prior incomplete production of all messages sent or received on May 9, 2025, between 12:00 p.m. and 5:00 p.m.

The government's silence raises further concern due to courts' misgivings nationwide about ICE's credibility. *See* Mot.21 n.15. Recently, one court even

[4] The one non-imaged device belongs to a senior DHS Official with whom the Congresswoman met in March 2025. His devices were wiped after this case began and after preservation instructions were supposedly given.

declined to extend to ICE and various DHS leaders the presumption of regularity "that government officials have properly discharged their duties, acted in good faith and followed required procedures." *M-J-M-A v. Hernandez*, 2026 WL 3301008, at *25 (D. Or. Nov. 2, 2026). Indeed, since January 2025, at least 60 cases have found government noncompliance with court orders and over 100 have expressed distrust of government information and representations. Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security (Oct. 30, 2026), https://www.justsecurity.org/120547/presumption-of-regularity/.

For these reasons, Congresswoman McIver requests that the Court order the government to share its preservation actions, describe whether the data from ICE Officers P and C has been retrieved and when, explain why the senior DHS Official's data was deleted, and take the preservation steps outlined in paragraphs 2-4 of the Proposed Order.

## IV. The Government Should Use Congresswoman McIver's Search Parameters

The government fails to raise any legitimate objections to Congresswoman McIver's proposed search parameters. Instead, it mischaracterizes the nature of her request, and repeats its unpersuasive arguments that she is not entitled to material or exculpatory evidence.

### A. The Proposed Time Periods are Appropriate

To start, the government falsely claims that the Congresswoman has

demanded the government review documents from *all* 23 custodians for the "period from February 3, 2025 through at least July 15, 2025." Opp.3; 21-23. To the contrary, she has pointed out why that is the appropriate timeframe for the electronic data of just the *seven management officials* present at Delaney Hall on May 9 ("DHS Officials"). Mot.24-25; 37; 40. As to the remaining 16 ERO Deportation Officers or HSI Special Agents who were also there that day (the "ICE Officers"), the appropriate time period is considerably shorter: from 7:00 a.m. on May 9, 2025, through June 10, 2025 (the date the indictment was signed). Mot.25; 36; 40.

For the seven DHS Officials, the February 3 start date is appropriate because that was the date of Congresswoman McIver's first visit to an ICE facility, and it is reasonable to assume that those officials began to discuss their reactions to and plans for dealing with such inspections very shortly thereafter. Messages and emails discussing those matters are discoverable.

It is equally important to include communications after May 31 for all 23 custodians. The government admits that it chose May 31 arbitrarily, and it did not probe later communications for responsive materials. But the discovery to date shows that the custodians discussed a possible indictment and whether they perceived Congresswoman McIver's conduct as sufficient to warrant criminal charges. Cortes Decl., Ex. 1; Opp.18-19 n.8. It is therefore likely that the return of an indictment on June 10—and the preparations that undoubtedly preceded it—

prompted further discussion that would contain highly probative evidence about the events that took place on May 9, and any individual or institutional bias. Accordingly, the government should search all custodians' communications through at least June 10.

The government should also review the seven DHS Officials' messages for an additional month, through July 15, the date of the last false press release about the Congresswoman. Although the government attempts to insulate the DHS Officials from these public statements by claiming that the press releases were drafted in Washington, evidence shows that DHS Officials were involved in drafting the false language on May 9. Cortes Decl., Ex. 8; Ex. 12; *contra* Opp.23. These documents could therefore provide further evidence of DHS's interference with Congresswoman McIver's oversight, and thus corroborate her intent and demonstrate bias.

### B. The Additional Proposed Search Terms are Appropriate

The government acknowledges that counsel conferred over search terms, and that it rejected most of those proposed by Congresswoman McIver. Yet its brief offers no meaningful basis for doing so, and simply restates the arguments she rebutted in her opening brief.

Without reiterating those arguments here, there is still no reasonable basis for the government to reject her terms out of hand simply "because of the likelihood that

they would sweep too broadly and produce a large volume of false hits." Opp.24. Indeed, it does not appear that the government even tested hit counts. Neither can the government refuse to search words tailored to locate undeniably responsive material—such as the Delaney Hall terms or terms "such as '18 USC,' or 'indict'"—merely because the government predicts that those terms will result in many hits or because the searches might identify privileged documents. *Id.* It is an unavoidable part of document review that terms capture non-responsive, and sometimes privileged, documents. And in the case of the alleged "privileged" terms, the government admits that "these terms will not necessarily generate privileged materials such as the example cited by Defendant McIver regarding '18USC.'" *Id.* n.10; *see also* Cortes Decl., Ex. 6.[5]

None of the government's arguments defeat its obligation under *Brady* and Rule 16 to review the documents and produce exculpatory, discoverable, and non-privileged information. The government's contrary rule would produce the untenable result that discoverable material need not be identified whenever it assumes it would

---

[5] Relatedly, the government states that the term "'DH' would hit on every reference to 'DHS.'" Opp.24. Congresswoman McIver has not suggested that the term "DH" be used with a root expander, so it should only capture "DH"—a shorthand term used by the ICE Officers to mean "Delaney Hall"—as a standalone word.

be time-consuming for agents and prosecutors to do so. There is no support for that idea.

The government's refusal to accept relevant search terms is also designed to improperly cabin the case by refusing to search for evidence about so-called "politics-related materials" or the press releases, which are key to Congresswoman McIver's state of mind and to bias. The government may not limit Congresswoman McIver's defenses by unilaterally controlling which documents it will review.

## CONCLUSION

Congresswoman McIver respectfully requests that the Court issue the proposed order she submitted on October 15, 2026. ECF 74-17.

Dated: November 23, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

By: ______________________________

Paul J. Fishman
Lee M. Cortes, Jr.
One Gateway Center | Suite 1025
Newark, NJ 07102
Telephone: 973-776-1901
Paul.Fishman@arnoldporter.com
Lee.Cortes@arnoldporter.com

*Counsel for Congresswoman LaMonica McIver*